sary to the decision of that case, is just and is pertinent to the facts which are here disclosed: "If an inventor, without substantial reason or excuse, abandons the use of his invention, and for nine years sleeps on his rights, and in the meantime, others, in good faith, employ their industry, skill and money in producing the same thing, and give the public the benefit thereof, putting it into extensive use and on sale, such a state of facts not only warrants the inference of abandonment by the first inventor, but it also creates, as between him and the others, the same equity as would arise if such others had gone further and taken out a patent. Whether the device be patented, or has 'gone into use without a patent,' should make no difference. Kendall v. Winsor, 21 How. [62 U. S.] 322. This is not because lapse of time, per se, deprives an inventor of his right, but because the circumstances giving character to the delay indicate abandonment; and, also, because the intervening rights of others make it inequitable that he should thereafter be permitted to assert any such exclusive title to the invention." To the same effect is the case of Marsh v. Sayles [Case No. 9,113].

I find no adequate evidence of public use by any one for two years preceding the date of the final application. Even if one of the guns, which was presented for competitive examination by the board of army officers at Springfield, in the year 1865, embodied the Cochran invention, it does not appear to me that the submitting of an invention to the test of examination by experts in competition with other inventions is the public use to which the statute refers. A use for the mere purpose of competitive examination, experiment and test is not a public use.

Let a decree be entered dismissing the bill.

[Upon an appeal to the supreme court, the decree of this court was affirmed. 118 U. S. 23, 6 Sup. Ct. 950.]

## Case No. 16,793a.

UNITED STATES STAMPING CO. v. KING et al.

[See 7 Fed. 860.]

## Case No. 16,794.

UNITED STATES STEAM–GAUGE CO. v. AMERICAN STEAM–GAUGE CO.

[1 Ban. & A. 30; Holmes, 309; 5 O. G. 208.] [1]

Circuit Court, D. Massachusetts.  Jan., 1874.

PATENTS—LIMITATION OF CLAIMS—PRIOR STATE OF THE ART—STEAM-GAUGES.

1. In the construction of the first, third, and fifth claims of the reissued patent for a registering steam-gauge, granted to complainant, as

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and Jabez S. Holmes, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 1 Ban. & A. 30, and the statement is from Holmes, 309.]

signee of Elijah Clarke, March 5, 1872, *held* that, in view of the state of the art at the date of the invention, these claims must be limited to the combination of the particular elements which the patentee has described, or their substitutes, known at that time.

2. So limited, the claims are not infringed by the steam-gauge, for which letters-patent were granted to T. C. Hargrave, March 19, 1872.

[Bill in equity to restrain alleged infringement of letters-patent [No. 101,583], for an improved steam-gauge, originally granted Elijah Clarke April 15, 1870, reissued to the complainant March 5, 1872 [No. 4,775]; and for an account. The alleged infringement consisted in the manufacture and sale, by the defendant, of steam-gauges, constructed substantially according to a patent granted one T. C. Hargrave for improvement in registering steam-gauges, March 19, 1872. The principal questions in the case were, as to the proper construction of the claims of the reissue, and as to infringement.] [2]

Thomas W. Clarke, for complainant.

George L. Roberts and Reuben L. Roberts, for defendant.

SHEPLEY, Circuit Judge.  Complainant is the assignee of letters-patent originally issued to Elijah Clarke, on the 15th of April, 1870, reissued to the complainant on the 5th of March, 1872, for a registering steam-gauge. It is claimed that defendant has infringed the first, third, and fifth claims of complainant's patent.

As, in the opinion of the court, none of the evidence introduced by the defendant on the question of novelty affects the validity of complainant's patent, or throws any reasonable doubt upon the question as to Clarke's being the original and first inventor of what is described in his patent, the prior patents in evidence in the case will be examined principally in view of the light they throw upon the state of the art, as affecting the construction of those claims in the patent which are in issue, bearing upon the question of infringement. They are the following:

1. In a registering steam-gauge, the combination of the following instrumentalities: viz., first, a registering-wheel; second, suitable mechanism for revolving the same in one direction, and for preventing its return; and third, suitable means for adjustment, so that the gauge will be operative as a register only at the prescribed limit of steam pressure, all constructed and operating substantially as set forth.

3. In a registering steam-gauge, the combination of the registering-wheel, I, the index-finger, P, the lever, F, the link, K, the pawl, H, and detent, J, for the purpose of denoting by the same impulse, at the same time, the number of excesses, and the maximum excess, of steam pressure, all constructed and operating substantially as set forth.

---

[2] [From Holmes, 309.]